OPINION
{¶ 1} Melody Cleveland appeals from the trial court's entry of final judgment on a jury verdict in her favor for $3,492.75. The jury rendered the verdict on Cleveland's negligence claim against appellee Lindy Lancaster for personal injuries that she sustained as a result of a car accident.
 {¶ 2} Cleveland advances four assignments of error on appeal. First, she contends the trial court erred in not introducing into evidence under Civ.R. 32(A)(4) the entire perpetuation deposition of a defense expert. Second, she claims the trial court erred in not allowing her to introduce the foregoing deposition in her rebuttal case. Third, she asserts that the trial court erred in failing to instruct the jury regarding aggravation of a preexisting injury. Fourth, she argues that the jury's verdict was against the manifest weight of the evidence.
 {¶ 3} Upon review, we conclude that the trial court did not err in failing to introduce the defense expert's deposition into evidence under Civ.R. 32(A)(4). We also find no error in the trial court's refusal to allow the defense exert's deposition to be introduced in Cleveland's rebuttal case. Although we do believe the trial court erred in failing to instruct the jury regarding aggravation of a preexisting injury, we find the error to be harmless. Finally, we do not find the jury's verdict to be against the manifest weight of the evidence. Accordingly, the judgment of the Greene County Common Pleas Court will be affirmed.
 I. Background {¶ 4} The present appeal stems from a May 1997 car accident in which Lancaster struck the right rear of Cleveland's stopped vehicle at a speed of approximately forty-five miles per hour. After the accident, Cleveland complained of neck pain and was taken to an area hospital. She was given an x-ray, prescribed a pain killer, and released the same day. She missed one day of work due to the accident.
 {¶ 5} Cleveland followed up with her family doctor about a week later and was directed to continue using a pain killer. Her next visit to the doctor was in mid-June 1997, when she received treatment for poison ivy. Thereafter, in mid-July 1997 Cleveland saw her family doctor again and complained about continued neck pain. The doctor opined that she had a cervical strain and told her to allow three months for the pain to dissipate. Cleveland returned to the doctor again in September 1997, complaining about sinus drainage, and in October 1997, complaining about chest pains apparently unrelated to the accident.
 {¶ 6} In September and October 1997, Cleveland underwent physical therapy due to continued complaints of neck pain. Thereafter, she visited her family doctor again in March 1998 and reported "reinjuring" herself while picking up her four-year-old child from a car seat. According to Cleveland, she awoke the morning after the incident experiencing severe neck pain, tingling, and numbness in her arm. Her doctor responded by referring her for another round of physical therapy in April 1998. Cleveland's neck pain continued, and she ultimately underwent an MRI in November 1998. The test revealed a herniated disk in her neck. She initially pursued physical therapy and chiropractic care to treat the herniation. In October 2000, however, she consulted a neurosurgeon and subsequently underwent surgery in January 2001 to correct the problem. As a result of the surgery, Cleveland missed four complete weeks of work and then worked part-time for another two weeks before returning to her regular schedule.
 {¶ 7} It was undisputed at trial that Lancaster's negligence had caused the car accident. The contested issues were (1) whether the car accident had caused Cleveland's neck pain or the herniated disk and (2) if so, the amount of damages to which she was entitled.[1] On the former issue, the key testimony came from opposing medical experts via videotaped perpetuation depositions. In short, Cleveland's experts opined that the May 1997 car accident had caused all of the problems with her neck, including the herniated disk.
 {¶ 8} On the other hand, Lancaster's expert, Dr. Michael Kramer, opined that her neck pain largely was attributable to a condition that existed before the car accident, namely a degenerative disease commonly known as arthritis. With regard to the herniated disk, he observed that Cleveland had visited a doctor only days before the car accident complaining of symptoms that could be caused by a herniated disk. He also found it significant that Cleveland had awakened with severe neck pain the day after hurting herself while removing her child from a car seat. In light of Cleveland's preexisting pain and the subsequent lifting incident long after the car accident, Dr. Kramer was unable to conclude to a reasonable degree of medical certainty that the car accident had caused the herniated disk. To the contrary, he concluded that the car accident most likely had nothing to do with the herniated disk. He did opine, however, that the car accident likely had caused a cervical strain from which Cleveland had recovered relatively quickly.
 {¶ 9} The jury apparently found Dr. Kramer's testimony to be the most credible, awarding Cleveland modest damages of $2,000 for pain and suffering, $144 for one day of lost wages, and $1,348.75 for reasonable and necessary medical expenses. A review of the verdict and the evidence establishes beyond dispute that the jury did not find sufficient proof of a causal connection between the car accident and Cleveland's herniated disk.
 II. Analysis {¶ 10} In her first assignment of error, Cleveland contends the trial court erred in not introducing into evidence under Civ.R. 32(A)(4) the entire perpetuation deposition of Dr. Michael Kramer.
 {¶ 11} The record reflects that Dr. Kramer initially was deposed on February 8, 2000. His testimony was based on Cleveland's medical history and a review of her records to date. As noted above, however, Cleveland subsequently consulted a neurosurgeon and had neck surgery in 2001. As a result, defense counsel deposed Kramer a second time on July 24, 2001, for purposes of having him review the medical records associated with her surgery and more recent treatment.
 {¶ 12} When presenting Lancaster's case at trial, defense counsel played a videotape of Dr. Kramer's full February 8, 2000, deposition. Cleveland now argues that the trial court was obligated to play for the jury a videotape of both the February 8, 2000, deposition and the July 24, 2001, deposition. In support, she relies on Civ.R. 32(A)(4), which provides: "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."
 {¶ 13} Upon review, we find Cleveland's argument to be unpersuasive. As an initial matter, it is questionable whether Civ.R. 32(A)(4) applies under the facts of this case. A primary purpose of the rule is to prevent one party from introducing only portions of a deposition and taking it out of context. The rule allows surrounding questions and answers to be introduced to explain the meaning of a portion of a deposition. SeeTrepel v. Roadway Exp., Inc. (6th Cir. 1999), 194 F.3d 708, 718-719
(discussing the similar language of Fed.R.Civ.P. 32(A)(4)). In the present case, however, defense counsel played for the jury a videotape of Dr. Kramer's complete February 8, 2000, deposition. We question whether the fact that he was re-deposed after Cleveland's neck surgery brings the July 24, 2001, deposition within the scope of the rule. It is not readily apparent to us that the second deposition should be considered "part of" the first deposition within the meaning of Civ.R. 32(A)(4).[2]
 {¶ 14} We need not dwell on the foregoing issue, however, because Cleveland's first assignment of error fails for a more fundamental reason. The record does not reflect that she ever sought to have the second videotape shown to the jury pursuant to Civ.R. 32(A)(4). Absent such a request by Cleveland's counsel, we cannot say that the trial court erred in failing to introduce the July 24, 2001, deposition under the rule.[3] Cleveland's first assignment of error is overruled.
 {¶ 15} In her second assignment of error, Cleveland claims the trial court erred in not allowing her to introduce a videotape of Dr. Kramer's July 24, 2001, deposition as rebuttal evidence. Cleveland did raise this issue at trial by moving to have the second videotape played in her rebuttal case. (Tr. Transcript at 127). The trial court overruled the motion, expressing doubt that Dr. Kramer's second deposition qualified as true rebuttal evidence. (Id. at 128).
 {¶ 16} On appeal, Cleveland insists that Dr. Kramer's second deposition was very helpful to her case-in-chief. In particular, she cites the following statement that he made about disk herniations while being deposed on July 24, 2001:
 {¶ 17} "* * * A disk herniation occurs because of some type of pressure on a disk that has a weakened annulus. If it's not weakened, it won't rupture. So, any movement of any type of activity in a preexisting problem could rupture a disk. In a normal disk, it would take something very traumatic almost to the point that you have fractures of the bones and ruptures of the ligaments to cause a disk herniation."
 {¶ 18} Cleveland argues that the foregoing statement would have helped her case because she professed to have had a normal disk before the accident and argued that something "very traumatic" (the accident) did cause it to herniate. In support of her assignment of error, Cleveland relies on Buchman v. Wayne Trace Local School Dist. Bd. of Ed.,73 Ohio St.3d 260, 1995-Ohio-136. In that case, the plaintiff played a videotape of a deposition of a defense expert in the plaintiff's case-in-chief. The issue on appeal was whether the plaintiff could play the videotape for the jury as opposed to reading from a written transcript.
 {¶ 19} Upon review, we find no merit in Cleveland's second assignment of error. Having reviewed the forty pages of Dr. Kramer's second deposition transcript, we agree with the trial court's conclusion that it does not qualify as rebuttal evidence. This court has recognized that to qualify as rebuttal evidence, testimony must rebut something in the defense case. McGarry v. Horlacher, 149 Ohio App.3d 33, 2002-Ohio-3161, at ¶ 49. It is not enough that the evidence corroborates the plaintiff's own case-in-chief. Id.
 {¶ 20} In the present case, Cleveland's experts testified in her case-in-chief that her neck problems were caused by the car accident. Conversely, Dr. Kramer opined in both his first and second deposition that the bulk of Cleveland's neck problems, including her herniated disk, were not caused by the car accident. In her argument to the trial court, Cleveland cited nothing specific in Dr. Kramer's second deposition that rebutted anything he had said in his first deposition.[4]
Therefore, we cannot say that the trial court abused its discretion in refusing to admit a videotape of Dr. Kramer's second deposition as rebuttal evidence.
 {¶ 21} Cleveland's citation to a specific portion of Dr. Kramer's second deposition on appeal does not persuade us otherwise. Even if we overlook her failure to bring this particular portion of the testimony to the trial court's attention, it simply does not rebut anything Dr. Kramer said in his first deposition. In the testimony upon which Cleveland relies, Dr. Kramer opined that in a normal disk, it would take something very traumatic to cause herniation. This testimony fails to rebut Dr. Kramer's testimony from his first deposition for at least two reasons. First, Dr. Kramer testified in both his first and second depositions that Cleveland did not have a normal disk; rather, she had signs of a degenerative disk disease known as arthritis. Second, Dr. Kramer conceded in both his first and second depositions that a traumatic whiplash-type injury could cause or contribute to a herniated disk. Based upon a review of Cleveland's various records and test results, however, he did not believe that the car accident caused or contributed to the herniated disk in this case. His position on that issue was consistent in both depositions.
 {¶ 22} In short, we believe the deposition testimony quoted by Cleveland may have been helpful to her case-in-chief, insofar as Dr. Kramer acknowledged that in a person with a normal disk a traumatic incident might cause herniation. This statement fits with Cleveland's argument that she had a normal disk and was involved in a traumatic incident, namely a car accident. Unfortunately for her, however, the testimony does not rebut anything Dr. Kramer said in his first deposition.
 {¶ 23} Finally, we find Cleveland's reliance on Buchman, supra, to be misplaced. That case had nothing to do with rebuttal evidence. The dispute there concerned whether jurors should view a videotape or hear deposition testimony read to them. Consequently, Cleveland's second assignment of error is overruled.
 {¶ 24} In her third assignment of error, Cleveland asserts that the trial court erred in failing to instruct the jury regarding the aggravation of a preexisting injury. This argument concerns Cleveland's request for the trial court to instruct the jury that it could compensate her for any aggravation that the car accident had caused to a preexisting disease or physical defect. Cleveland argued that this instruction was warranted because the record contained testimony from which the jury might conclude that the car accident had aggravated a preexisting condition. The trial court denied the request, finding it at odds with Cleveland's own trial testimony that her injury was not attributable to the aggravation of any preexisting condition.
 {¶ 25} Upon review, we conclude that the trial court erred in failing to instruct the jury on the aggravation of a preexisting condition. On cross examination at trial, Cleveland testified as follows:
 {¶ 26} "Q. Let's start first with how you would characterize the disk herniation. My understanding, based upon my familiarity with this case and your claims, [is] that you are claiming that the car accident caused this herniation, correct?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. You are not claiming that it existed beforehand and it was made worse or aggravated, are you?
 {¶ 29} "A. That's correct.
 {¶ 30} "Q. Another way of saying that would then be that you're claiming that the disk herniation was a new injury caused by the car accident?
 {¶ 31} "A. Yes." (Tr. Transcript at 69).
 {¶ 32} Thereafter, when requesting a jury instruction prior to closing argument, Cleveland's attorney asserted that the record contained testimony about a "preexisting problem" and that "properly awarded damages in this case need to include that." (Id. at 120). Defense counsel objected to the request for an instruction on the aggravation of a preexisting injury, arguing: "From day one they've said that this has been a brand new injury, and we have presented evidence to suggest otherwise, but that doesn't entitle them to suddenly turn their case into an aggravation of a preexisting condition case, especially when the Plaintiff testified directly from the stand that this is brand new." (Id. at 121). In response, Cleveland's attorney argued that the jury instruction was necessary because defense counsel had injected the issue of a preexisting injury into the case. (Id. at 121-123).
 {¶ 33} We agree that the requested instruction should have been given. "`Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.'"Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591, quoting Markus Palmer, Trial Handbook for Ohio Lawyers (3 Ed. 1991) 860, Section 36:2; Feterle v. Huettner (1971), 28 Ohio St.2d 54, at the syllabus ("In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.").
 {¶ 34} Although Cleveland testified and denied that her herniateddisk was a preexisting condition that had been aggravated by the car accident, the record nevertheless contains evidence from which the jury reasonably could have concluded that some of her neck pain was attributable to a preexisting condition that had been aggravated by the accident. In particular, Lancaster's own expert, Dr. Kramer, testified that Cleveland had a preexisting arthritic condition in her neck and that the car accident caused her to experience a "cervical strain." Dr. Kramer later stated: "I think that she had some aggravation of perhaps apreexisting condition.[5] It was noted in Dr. Hoback's records two and a half weeks before the accident and I think that she may have had a cervical strain. I can't tell you that she didn't aggravate for a shorttime some preexisting problem but all indications are that she recovered from that and then had a second incident." (Emphasis added).
 {¶ 35} In light of Dr. Kramer's testimony, we believe Cleveland was entitled to a jury instruction on the aggravation of a preexisting condition. Lancaster does not dispute that the requested instruction essentially was a correct statement of the law, and the jury reasonably could have found at least some aggravation of a preexisting condition based on Dr. Kramer's testimony. Cf. Barrows v. Stringer (Oct. 25, 1979), Ross App. No. 723 (finding a jury instruction on the aggravation of a preexisting condition warranted, despite the plaintiff's failure to plead such a theory, where the defendant relied on the existence of a preexisting condition as a defense).
 {¶ 36} Under the facts of the present case, however, we are firmly convinced that the trial court's failure to give the requested instruction constituted nothing more than harmless error. This is so because we are able to determine with relative certainty: (1) that the jury awarded Cleveland compensatory damages for pain and suffering, medical bills, and lost wages she incurred up to when she lifted her child out of a car seat in March 1998 — which was approximately ten months after the car accident at issue; and (2) that the jury did not find sufficient proof of a causal connection between the car accident and Cleveland's herniated disk; rather, it found that the herniated disk was caused by Cleveland lifting her child out of the car seat. As a result, the jury declined to award her any type of damages after the car-seat incident.
 {¶ 37} Given that the jury awarded Cleveland damages for her medical problems from the time of the car accident to the time that she lifted her child out of a car seat, it plainly was not operating under a mistaken belief that it could not award damages for the aggravation of a preexisting arthritic condition. To the contrary, the record reveals that the jury did precisely that, notwithstanding the absence of a specific jury instruction.[6] Accordingly, we find the trial court's error to have been harmless, and we overrule Cleveland's third assignment of error.
 {¶ 38} In her fourth assignment of error, Cleveland argues that the jury's verdict was against the manifest weight of the evidence. In support, she notes that her medical experts, who had treated her for her neck problems, all believed the car accident had caused the herniated disk. She then attempts to discredit Dr. Kramer's contrary opinion, which was given under oath, by stressing that he primarily reviewed medical records and that he derived a significant portion of his income from representing insurance companies. Finally, she notes that Dr. Kramer conceded the car accident could have caused the herniated disk. In light of these facts, she argues that the minimal verdict she received was against the manifest weight of the evidence.
 {¶ 39} Having reviewed the record, we do not agree that the jury's verdict is contrary to the weight of the evidence. We have held that to set aside a damages award as against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, that it cannot be reconciled with the undisputed evidence in the case, or that it is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim. Bailey v. Allberry (1993),88 Ohio App.3d 432, 435.
 {¶ 40} In the present case, it is apparent that the jury simply elected to believe Dr. Kramer, who opined that the car accident did not cause the herniated disk. Dr. Kramer explained the factual basis for this conclusion in considerable detail. Given the evidence before us, we believe the jury reasonably could have chosen to believe either party's expert witnesses. Its decision to find Dr. Kramer the most credible does not shock our sense of justice and fairness.
 {¶ 41} The verdict also can be reconciled with the evidence. The jury found that Cleveland's herniated disk was not caused by the accident, a conclusion that the record reasonably supports. Nevertheless, the jury did award her damages for injuries she sustained other than the herniated disk. As noted above, she received $2,000 for pain and suffering, $144 for lost wages, and $1,348.75 for reasonable and necessary medical expenses. The record supports a conclusion that this award fairly compensates Cleveland for the pain and suffering, lost wages, and medical bills attributable to the car accident. Finally, we see nothing to suggest that the jury failed to consider all elements of damages comprising Cleveland's claim. Accordingly, we conclude that the jury's verdict is not against the manifest weight of the evidence. The fourth assignment of error is overruled.
 III. Conclusion {¶ 42} Having overruled Cleveland's four assignments of error, we hereby affirm the judgment of the Greene County Common Pleas Court.
 {¶ 43} Judgment affirmed.
Fain, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Other issues at trial included a loss-of-consortium claim brought by Cleveland's husband and negligence claims brought by her children, who had been passengers in her vehicle. We need not discuss these other claims because they are not before us on appeal.
[2] We recognize that a transcript of the July 24, 2001, deposition is captioned as a "continuation" of the earlier deposition. Of course, this caption has no bearing on whether that second deposition should be considered "part of" the first deposition for purposes of Civ.R. 32(A)(4).
[3] On appeal, Cleveland insists that opposing counsel knew all along that she wanted the second videotape to be played at trial. She also contends that during a conference in the trial court judge's chambers she objected to defense counsel being allowed to play only the first videotape. She asserts that the trial court nevertheless refused to require defense counsel to play both tapes. Unfortunately for Cleveland, however, none of the discussion that occurred in chambers appears in the record. As a result, we cannot consider it.
[4] This is unsurprising given that an expert witness would not be expected to provide testimony that rebuts his own earlier statements. We recognize the possibility, of course, that Dr. Kramer's testimony in his second deposition could have contradicted the testimony he gave in his first deposition. But that did not happen here.
[5] Although Dr. Kramer used the phrase "perhaps a preexisting condition," it is undisputed that he believed Cleveland did have a preexisting degenerative arthritic condition in her neck.
[6] In his closing argument, defense counsel reasoned that Cleveland was entitled, at most, to her medical expenses from the time of the accident up to the time that she lifted her child out of a car seat. According to defense counsel, this amount was $1,348.75, which is exactly what the jury awarded her for reasonable and necessary medical expenses. It is obvious, then, that the jury found the March 1998 car-seat incident to have caused a separate injury, the herniated disk, for which Lancaster was not responsible, which is precisely what defense counsel argued. In fact, we note that the record is devoid of testimony that Cleveland's herniated disk, as opposed to her post-accident neck pain, was caused by the aggravation of a preexisting condition. As noted above, Cleveland denied just that in her trial testimony. As for Dr. Kramer, he also rejected the notion that the car accident in any way had contributed to the herniated disk. He acknowledged only that the car accident temporarily may have aggravated Cleveland's arthritic condition.